_K WEST JR. #F60029
_.S.P.-LAC-DI-118 LOW
P.O. BOX 8457
LANCASTER, CA 93539-8457
_____
PRO-PER

FILED

FEB 7 2008

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK



ORIGINAL
COPY

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Mack A. West Jr.
_____
(Name of Plaintiff)
P.O. BOX 8457
_____
(Address of Plaintiff)
Lancaster, Ca 93539-8457
_____

vs.

Neil ~~wasnikn~~ Washibyashi   et. al.
_____

_____

_____
(Names of Defendants)

08 CV 290 LEW KJM
(PC)
_____
(Case Number)

COMPLAINT For Damages
Jury Trial Demanded

1. 42 U.S.C. §1983 - 14th Amendment
2. 42 U.S.C. §1983 - 8th Amendment
3. 42 U.S.C. §1983 -
4. ADA, 42 U.S.C. §12131 et. seq.
5. Injunctive Relief

I. Previous Lawsuits:

   A. Have you brought any other lawsuits while a prisoner:    ☐ Yes    ☑ No

   B. If your answer to A is yes, how many?: __N/A__   Describe the lawsuit in the space
below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper
using the same outline.)

      1. Parties to this previous lawsuit:

         Plaintiff ~~Mack A. West Jr.~~ N/A _____

         Defendants ~~Neil Washibyashi Debra Crider et. al.~~, N/A _____

FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT
UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983          Rev'd 5/99

3

13

2. Court (if Federal Court, give name of District; if State Court, give name of County)

N/A

3. Docket Number __N/A__

4. Name of judge to whom case was assigned __N/A__

5. Disposition (For example: Was the case dismissed? Was it appealed? Is it still pending?)
N/A

6. Approximate date of filing lawsuit __N/A__

7. Approximate date of disposition __N/A__

## II. Exhaustion of Administrative Remedies

A. Is there a grievance procedure available at your institution?     ☑ Yes     ☐ No

B. Have you filed a grievance concerning the facts relating to this complaint?
☐ Yes     ☑ No

If your answer is no, explain why not _mental incompetent, transfered to State Hospitals; was not aware of some violations until after transferring to prisons - concerning some grievances, and refusal By officers and Sergeants to process grievances._

C. Is the grievance process completed?     ☑ Yes     ☑ No

## III. Defendants

(In Item A below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank. Use item B for the names, positions and places of employment of any additional defendants.)

A. Defendant _Neil Washibyashi_ is employed as _Sergeant / officer_ _officer_ at _Solano County Sheriff's Department_

B. Additional defendants _Scott Bradford, Lieutenant, at Solano County Sheriff's Department, Carolyn Childers, Sergeant at Solano County Sheriff's Department; Hadi Dolan, Sergeant, at Solano County Sheriff's Department; Richard Duncan, officer, at Solano County Sheriff's Department; Don Davis, officer, at Solano County Sheriff's Department; Jason Veach, officer, at Solano County Sheriff's Department; Teresa Crow, Classification Officer, at Solano County Sheriff's Department; Robert Potnam, officer, at Solano County Sheriff's —_
(see, on Page 4A)

4

14

continuing B. Additional defendants:

Department; Danny Hall II, officer, at Solano County Sheriff's Department; Steven Bottoms, officer, at Solano County Sheriff's Department; Rodney Herman, officer, at Solano County Sheriff's Department; Thomas Ferrara, Captain, at Solano County Sheriff's Department; Tina Davis, Program Sergeant, at Solano County Sheriff's Department; Angie Jim, medical staff, at Solano County Sheriff Department; Greg Smith, medical Staff, at Solano County Sheriff's Department; John Maike, medical staff, at Solano County Sheriff Department; Rod Marsh, Classification Sergeant, at Solano County Sheriff's Department; John Doe (1), officer, at Solano County Sheriff's Department; John Doe (2), officer, at Solano County Sheriff Department; Jane Doe (3), officer, at Solano County Sheriff Department; ~~Fairfield~~ John Doe (4) Fairfield Police Department, Police Officer; John Doe (5), officer, at Solano County Sheriff's Department; Donald Davis, officer, at Solano County Sheriff Department; Jason Garrison, officer, at Solano County Sheriff Department; Frank Bailey, officer, at Solano County Sheriff Department; Debra

Sigler, Sergeant, at Solano County Sheriff's Department; and the staff or employees that knew of the cruel and unusal punishmend in adseg regarding the inhamane living conditions; also any staff that participated in the discrimination of plaintiff by kicking him out of the life styles program for his mental disabilty; officer Jason Garrison

Note: ALL Defendants are being sued in the individual and/or official capacity

IV.     Statement of Claim

(State here as briefly as possible the facts of your case.  Describe how each defendant is involved, including dates and places.  Do not give any legal arguments or cite any cases or statutes.  Attach extra sheets if necessary.)

On or about April 20, 1999, Plaintiff was arrested and housed with general population. Plaintiff is and was a pretrial detainee and a mentally ill / Developmentally Disabled Drug addict during his incarceration at Solano County, Fairfield detention facility, 500 Union Ave, Fairfield, Ca 94533; During the time leading up to plaintiff's transfer to Atascadero State hospital, because of plaintiff incompetence to stand trial. Plaintiff was Discriminated under the Americans with Disabilities Act and plaintiff's eighth Amendment was violated by not providing him with rehabilitative programs. (Plaintiff transfered to Atascadero 10-19-99) The ADA violation was not having a proper housing for Plaintiff, which subjected plaintiff to abuse; On or about 12-18-99, Plaintiff was sent back to Solano County, Fairfield Detention Facility -

(see also EXHIBITS:A)     (see attached- - page 5A) - and thru 5K)

V. Relief.

(State briefly exactly what you want the court to do for you.  Make no legal arguments.  Cite no cases or statutes.)

Plaintiff requests the court order the facility to provide rehabilitation programs and proper and adequate housing for mentally ill and developmentally disabled inmates and housing these inmates in medium, minium, marium of their own module, seperated from normal inmates. (injunctive Relief) and grant plaintiff thirty thousand dollars for violating plaintiff's eighth and fourteenth amendment and the Americans with Disabilities Act and Rehabilitation Act, and for inadequate mental Health care. Grant plaintiff 'seventy five thousand for the use of excessive force in the incident dollars on August 6, 2002 and for the inadequate mental health care, for emotional and mental -

(see page 5K)

Signed this __2__ day of __Feburary__, 20_08_.

MWJR / MACK WEST JR
(Signature of Plaintiff)

I declare under penalty of perjury that the foregoing is true and correct.

Feburary 2, 2008
(Date)

MWJR / MACK WEST JR
(Signature of Plaintiff)

5

15

Continuing IV. Statement of Claim

and the discrimination continued under the ADA and the eighth Amendment violation continued by not providing Plaintiff Rehabilitative Programs. and discriminating by means of placing in Adseg (Administrative Segregation) based on plaintiff's Mental illness and based on not having a unit for the mentally ill and Developmentally Disabled and during that time plaintiff was refused yard time and exercise equipment while on Adseg A, and C. module. Plaintiff contested the not being allow yard time and was told by Floor Officer Donald Davis that because of the rotation of one inmate at a time was the reason for plaintiff not being allowed to the yard." This is also a violation of Plaintiff's eighth Amendment. (On 12-27-01) Plaintiff was transfered to Atascadero State Hospital for being incompetent to stand trial) On 8-6-02 Plaintiff was transfered to Fairfield Detention Facility from Patton State Hospital, upon Plaintiff arrival to Fairfield Detention Facility. Plaintiff was being processed in the jail. While in a holding cell plaintiff began to request mental Health assistance, but was ignored by the officers in the immediate vicinity. Plaintiff began to bang on the door of the holding cell Sergeant Neil Washibyashi came and asked plaintiff what was his problem? Plaintiff explained that he needed his medication that was sent with him from Patton State Hospital because of the voices that was bothering him, because and needed to talk to mental health staff. Sergeant Neil Washibyashi told Plaintiff No and insodoing denied plaintiff of Mental Health Services and was deliberate indifference to plaintiffs serious medical need and this lack of illustrating proper training of in mental Health issues, because plaintiff has a severe mental illness that has caused significant distruption in his everyday life and which prevents him his functioning in the general population... Sergeant Neil Washibyashi then left plaintiff. Plaintiff then began to call for Mental health staff and started banging on the door again. After about ten minutes the same Sergeant Neil Washibyashi came back with other officers, Officer Don Davis, officer Robert Putnam, officer John Doe, and officer John Doe. Neil Washibyashi yelled that "Plaintiff" Fucked-up now." Plaintiff backed to the rear of the cell and the door opened, officer Don Davis came charging in at plaintiff with the other officers behind him, including Neil Washibyashi. out of fear plaintiff swung at officer Don Davis hitting him in the face. little struggle was made then plaintiff was subdued. But after plaintiff was subdued and handcuffed, Neil Washibyashi kick and hit plaintiff and said Kick NOW MUTHERFUCKER and the other officers took Plaintiff and turned him upside down and started squeezing plaintiff's genitals, which led plaintiff to scream in agony, followed by plaintiff crying. officer Jane Doe told plaintiff that he was just mad because he had to go to trial. Plaintiff told her that Fuck you bitch and she responded she still Loved plaintiff and plaintiff told her that she did not love her self officer Jane Doe began to laugh at plaintiff. While plaintiff was sitting handcuffed on the floor outside the cell. plaintiff was placed in a restraint called the wrap which limited plaintiff's legs movements, arm movement and the torso movement and placed a helmet over plaintiff's head. Sergeant Neil Washibyashi told plaintiff that he would have to stay like this for a couple of hours until plaintiff chilled-out. plaintiff was then released from the wrap. Plaintiff was escorted to Adseg (Administrative Segregation) as soon as plaintiff seen a nurse, (nurse Angie Jim) he reported to her what happen and she prescribed plaintiff same pain killers.

(see page 5B)

5A

Continuing **IV.** Statement of Claim

Sergeant Neil Washibyashi and officer Robert Putnam, officer Don Davis, officer John Doe, and officer John Doe all used excessive force maliciously and sadistically for causing harm and conspired and aided and abetted in the malicious and sadistic acts after plaintiff was down on his stomach handcuffed not resisting and Neil Washibyashi kicking and hitting plaintiff and the others participated by hitting plaintiff and turning him upside down and squeezing plaintiff's genitals and then concealing the incident/mistreatment ever happen. Plaintiff never received any write-up or hearing concerning this incident/mistreatment. Plaintiff was treated by Nurse Angie Jim for a bruised med-section, hurting genitals, plaintiff's hair was pulled out by one of the officers, on the right side of plaintiff's head, head injuries, head aches.

From April 20, 1999 through sometime in 2005 plaintiff was acquainted with a jailhouse lawyer named, Robert Nesbitt Jr. who assisted plaintiff in legal matters, writing grievances, and contesting plaintiff's Adseg (Administrative Segregation) status, which amounted to plaintiff being placed in general-population because of there being no mental health ward/unit to place plaintiff, which violated plaintiff rights under the ADA, (Americans with Disabilities Acts) by restricting plaintiff to Administrative Segregation and placing plaintiff with normal inmates, which subjected plaintiff to manipulation, exploitation, other forms of abuse. Robert Nesbitt Jr. (The jailhouse lawyer) decided to house with plaintiff because of the misconduct of jailhouse personnel and the misconduct of normal inmates towards plaintiff. (plaintiff was housed in D-module on the fourth floor, General-Population) and then E-module, general population and that where plaintiff and Robert Nesbitt were cellmates. In the year 2003 or 2004 plaintiff was told by Robert Nesbitt of a program that could help him, called Life Skills, which is facilitated by a Doctor Mike Castelle. Robert Nesbitt assisted plaintiff in requesting to enroll in the program. Both plaintiff and Robert Nesbitt was later enrolled and moved to H-module where the program was held. The requirement of staying in the program was to attend all groups and participate, in which both accomplished. Robert Nesbitt later move from the care of plaintiff and went to another housing unit temperarily, but told plaintiff to keep what he was doing that he was doing good and he will be back shortly. Plaintiff agreed to continue to do good. One friday plaintiff became sick with a flu-like symptom and did not attend a church meeting, which is not required for him to attend. So, Pastor Hill was concerned and went to plaintiff's cell, plaintiff informed Pastor Hill that he was sick and nothing else, in which Pastor Hill told plaintiff that he will pray for plaintiff and then he left. Doctor Mike Castelle came shortly after to check on plaintiff, and learned that plaintiff was sick, in which he told plaintiff to get enough rest and wished plaintiff well. The next day Sergeant Debra Sigler, told plaintiff to pack up his property because he was being moved. Plaintiff asked why? The Sergeant replied because she was ordered to move him. Plaintiff asked what did he do wrong? The Sergeant replied you were not going to your groups. Plaintiff told her that was not true and in fact he never missed a day. The Sergeant replied you did not attend your group

(see page 5c)

5B

on friday. Plaintiff told her that there was not groups on friday only Church and Church is voluntary. The Sergeant (Debra Sigler) replied, you are not taking your medication thats why you are being moved (which was discrimination under the ADA; Americans with Disabilities Act). Plaintiff asked her could she call Doctor Mike Castelle. She replied No. Plaintiff explained to her that Doctor Mike Castelle instructed him to have any jailhouse employee call him if plaintiff was in trouble or need help or an emergency. She replied that plaintiff can talk to him later on Monday or Tuesday. Plaintiff contended that the only reason why they were doing him this way was because Robert Nesbitt (Moses) was not here to help him. The Sergeant replied, that she had not control over plaintiff moving, that it was up to Classification. Plaintiff requested, that could she call Classification to straighten this out, because it had to be a mistake or something. She said No. Plaintiff asked, so where was the sergeant moving him, she said, to A-module Adseg (Administrative Segregation). Plaintiff replied but he did not do anything wrong, so why did he have to go to the hole. (Note: plaintiff was originally housed in H-module medium security, to A-module Adseg, which is worse than just maxium security housing, because there is no T.V., single celled, absolutely no exercise equipment, all inmates are only allowed on 30 to 45 minutes of recreational time a day and to take a shower, and depending on the rotation of inmates no yard time would be given to the inmates that recreational time was after two thirty or three o'clock, and at times was not able to call their attorneys because of the time frame); Plaintiff questioned Sergeant Debra Sigler about her not wanting to him in the program. She replied, yes, she did vote against plaintiff being in the program. Plaintiff asked why, she said because she felt that people with mental problems should be in adseg. and that she felt that plaintiff was not going to make it in the program. Plaintiff told her that she and people like her was evil and was not right. She said that plaintiff was entitled to his opinion. She left. (Note: plaintiff was not allow the 3 hours a week yard time, which is required by the Barclays California Regulations Code, Title 15 Subchapter 4. minium standards for local jail and Detention facilities; and all adseg inmates was not allow recreational time on Saturdays). Shortly after plaintiff saw Sergeant Fred Jones and explained what had happen to him. Sergeant Fred Jones told plaintiff that he would check into the situation. He later informed plaintiff that what he read was that he was kicked out of the program for not going to groups, not taking him medication. Plaintiff told Sergeant Fred Jones that all that was a lie just to get him out of the program. Sergeant Fred Jones told plaintiff to write a grievance on it, plaintiff told him he did not know how and that (Moses) Robert Nesbitt use to write his grievances. Sergeant Fred Jones told plaintiff that he did not know what to tell plaintiff, and he left. Plaintiff started seeing Doctor Mike Castelle, what would happen is that plaintiff would have a officer that is assigned to his section place a call to Doctor Mike Castelle for plaintiff and Doctor Mike Castelle would make it a point to visit plaintiff at his cell door and then promise to come back on certain days. Plaintiff told Doctor Mike Castelle about all that had happen and the refusal of Sergeant Debra Sigler calling him for plaintiff. Doctor Mike Castelle told plaintiff that he would talk to Lieutenant Joseph Headley and Sergeant

(see page 5D)

5c

name Fred Jones. Plaintiff mental condition was some stable but the solitary placement, more restricted lack of yard and recreational time, the lack of access to calling plaintiff's attorney, the lock down on saturdays, were all vital and so harsh that initiated the onset of plaintiff mental illness and him becoming unstable which had a adverse affect on plaintiffs criminal case. The taking and placing plaintiff from medium security program (life skills) to Administrative segregation for purpose of his mental illness or not taking medication for the mental illness is discrimination under the American with Disabilities Act (and all the time mentioned here in of the discrimination under the American Disabilities Act. Plaintiff is incorporating the United States Constitution fourteen amendment the Due process clause and the Eighth Amendment of cruel and unusual punishment), because the Sergeant Debra Sigler and the other jailhouse staff that participated in the moving of Plaintiff was deliberately indifferent to the serious medical need of Plaintiff and special requirements of Plaintiff.

Plaintiff was moved to C-module Adseg that had a Television but the same status of placement and functioning. After Plaintiff stay in C-module Adseg he was moved to general population D-module cell eight because the facility had no adequate housing for mental illness and developmentally disabled inmates. Plaintiff told officer Chase of plaintiff having a problem with some normal inmates in D-module and requested to move to E-module with a family member named Larry Chapman in cell # 11 (eleven), while housed with his family member plaintiff was seen by Doctor Menn, a psychiatric during plaintiff's evaluation Doctor Menn was informed by plaintiff that he was now housed with a family-member. Doctor Menn replied "All YOUR FAMILY ARE CRIMINALS" and started laughing. Plaintiff said that "All his family was not criminals" and left being very upset and emotional and mentally abused. The doctor statement was unprofessional and failed below adequate mental Health screening and evaluation and Mr. Menn was deliberately indifference to Plaintiffs severe mental illness and violated plaintiffs eighth eighth amendment. Plaintiff went back to his cell and told his relative of what the doctor said about him and his family and plaintiff was told not to see the Doctor again.

While housed with his family member in E-module, Sergeant Carolyn Childers saw plaintiff working out under the stairs with inmate Jimmy Ally with a sheet wrapped around one of the steps pulling his self up (doing pull-ups). The sergeant stormed in the module and told plaintiff to take it down, plaintiff complied. She then told plaintiff to give her the sheet. Plaintiff told her no and that he was told by staff that inmates are suppose to 2 (two) sheets and thats all he had. She then told plaintiff that he could not have no bedding in the recreational area, Plaintiff said he did not know that. She replied that is the rule, Plaintiff said okay she told plaintiff to put the sheet in his cell. Plaintiff was putting the sheet in his cell

(see page 5E)

5 D

Continuing IV . Statement of Claim

She stormed in the cell and inspected the cell she told officer Castro to take the laundry line down that was on the ceiling and said "now I'm finish". Plaintiff and his family-member Larry Chapman asked each other what was all that about? Plaintiff said that she was a evil person. While housed with the same family member and on their scheduled recreational time, a inmate was caught pouring hot-water to another inmate in their cell. The Sergeant, Carolyn Childers, saw this and locked everyone down in the C-module section. Inmates contested that she punish the person that did the act and not take it out on every body, this was denied. A inmate that was cellies with Jimmy Ally Bell, written a grievance on Sergeant Carolyn Childers for her misconduct for Plaintiff and labled the grievance "Forward to Lt. Joesph Headley" Plaintiff was told to tell the floor officer Carlos Avila to make sure Lt. Joesph headley get the grievance because its about sergeant Childers treat us wrong. So, plaintiff did. About 20 to 30 minutes later plaintiff's cell was open from the tower officer Kristi Hardy, plaintiff walked out up to the main door of the module and looked out the window by the shower and saw a group of officers putting on gloves, he can back to his cell and waited at the door. officer Carlos Avila was walking towards Plaintiff with his baton out, Plaintiff asked him was he going to hit him with that thing. Carlos Avila did not respond but kept going towards Plaintiff. Officer William Broadnaux told officer Carlos Avila to put that thing away (the baton), he complied. Plaintiff cell was surrounded by several officers. Plaintiff asked what was going on? officer William Broadnaux told Plaintiff he did not know, but the Sergeant wants you to cuff-up Plaintiff asked for what? Broadnaux told him, he did not know. Plaintiff asked could he pack up his personal and legal property? The request was denied. After Plaintiff was handcuffed the Sergeant Carolyn Childers appeared. Plaintiff ask her what was all this about but she ignore plaintiff and stormed out the module. Note: while plaintiff was housed in C-module general-population with his relative his relative assisted plaintiff in filing grievances on violation of his eighth amendment on condition of the facility no having equipment like other modules do for exercising which was denied and the requirement of the facility to have a school or education programs because plaintiff wanted a G.E.D. and was not given access to school or educational programs or G.E.D. for over four years of his time there. The reply was that the facility did not have a contract with the School district. this is a violation of plaintiffs eighth amend-ment because this educational programs falls under Rehabilitative Programs.

Plaintiff was escorted to A-module Adseg cell #12, he kept asking different officers why

5E

Continuing: IV Statement of Claim

was he being moved he had done nothing wrong, but no one would answer. officer William Broadnaux came to the cell and plaintiff asked him why was he treated like this, officer William Broadnaux told him something about some grievances. Plaintiff said he turned in a grievance on Sergeant childers that someone wrote for him forwarding to Lt. Joesph Headley. Officer Broadnaux then said well she said you threatened her. Plaintiff said he did not threaten her, let alone write the grievance and the inmate that wrote the grievance, read to plaintiff what he wrote and he did not say anything about hurting her or anything like that. Officer Williams Broadnax told plaintiff he would inform Sgt Childers of what plaintiff told him. Plaintiff requested to clean the cell because of the filth and unsanitary condition. Officer Smith, Jeffery told Plaintiff no and to wait in the morning. Plaintiff told him that he should not be allowed to enter a filthy and dirty cell before it was cleaned firsst. Officer Jeffery Smith gave plaintiff a blanket and no other linen. The shift changed about 10:30 or 11:00 pm. Plaintiff called the tower officer and she played with the intercom by turning it off and on. Tower Officer Stacey was called one more time by plaintiff and plaintiff told her that he was going to kill himself. She responded good. The floor officer arrived and ask plaintiff did he call the tower officer and tell her that plaintiff was going to kill his self, plaintiff said yeah. The floor officer called the incident in and plaintiff was escorted to receiving/intake on suicide watch. plaintiff was ordered to remove his clothes and was given a smock but no mattress or a smock blanklet and slept on the floor of the suicide watch cell, this was cruel and unusual punishment (including not providing tissue paper to wipe plaintiff self after his bowl movement.) The next morning Nurse Angie Jim came and talked to plantiff and plantiff told her that no one would listen to him so he toled them that he was going to kill himself. Nurse Angie Jim asked plaintiff was he still feeling this way, he said no and she order that he be moved back to his housing unit. Officer Danny Hall and Officer Steven Bottoms were at the deck of fourth Floor A-module. Plaintiff was released and he asked both officer could he get his property and could he clean his cell. They said yes as soon as the next person finished his unlock. Plaintiff was later let out his cell in A-module Adseg to get his property. officer Steven Bottoms told plaintiff that they took some books and other items that seem like garbage. Plaintiff told him that could he see the garbage and books that was took because the books were his and moses (Nesbitt, Robert) and the garbage was most likely not garbage. He, Officer Bottoms told Plaintiff that they were gone now, and the only way he could get his property is to filel a grievance; plaintiff was assisted with writting a grievance on his property that was missing and took from him. The response was that there were no sign of plaintiff property. The next day plaintiff was on his unlock and he noticed a extremely

(see page 5G)

5F

continuing: IV. Statement of Claim

awful smell and clothes and bed linen in the shower, puddles of toilet water, banging, and scream-ing and a dirty floor in the module he was housed at. Plaintiff later turned in a sick-call slip because of the excessive noise by unstable mentally illi inmates that was causing plaintiff head-ache, and tost of appetite, and sleep deprivation, and the stomach ache from the extremely awful smell that lingered in the unit. These violations created an environment toxic to plaintiff mental health. Plaintiff saw Sgt. Carolyn Childers escorting a inmate in the module with other officers. Plaintiff asked to speak with her. She said hold on. Sgt. Childers came to Plaintiff cell, plaintiff asked her what does she got against Plaintiff She said nothing. Plaintiff then said then why am I here, she said because you threaten me Plaintiff said he did not threat her and that he did not even write the grievance. She told Plaintiff that she knew plaintiff did not write the grievance. and knew that its very hard for plaintiff to read and write, but that Plaintiff signed the grievance, and that she was trying to go-criminal. Plaintiff ask her what did that mean. She said press charges on him. Plaintiff asked her what was all this about, was it about the sheet incident. She said no and that she feels that Plaintiff belong in A-module Adseg because of Plaintiffs mental illness. She left. Plaintiff called his conservator to let him know how, he was being treated and that he believed that he was not being allowed as access to the Lt.Joseph Headley to report the violat-ion that he was suffering from the jail employee's and suggested that His conservator call Lt. Headley to help him. Sgt.Jerisen took a pair of boots that was sufficing the foot pain plaintiff was experiencing. He told plaintiff that if he had a shoe chrono that then he would give the boots back for his condition. But after plaintiff showed the foot chrono he refused to give plaintiff the boots, which led to plaintiff suffering more pain and swelling. Sgt. Jerisen also visited Plaintiff and told him that the grievance was not no threat and that plaintiff must of did something to her for her to do this to Plaintiff. So plaintiff filed a grievance on his due process rights was being violated and of him being punished for something he did not do, and not receiving any write-up for the supposely threat on Sgt. Childers. After about fourteen days plaintiff was slid a write-up on the threat. Plaintiff talked to his floor officer Jason Garrison about the write-up and asked could he call Lt. Headley to explain to him what happen. Officer Garrison called and told Plaintiff that Lt. Headley and Classification was going to punish plaintiff for 10 (ten) days. Plaintiff contested. About three days later plaintiff was in his cell and inmate Daryel Pugh was on his unlock. Plaintiff dosed off. The hearing officer Teresa Crow falsified and shamme Plaintiff hearing by stating plaintiff told her to Fuck off when she came to plaintiff cell to conduct a discipline hearing. Plaintiff was given the ten days punishment. And talked

5G

(see page 5H)

continuing: IV Statement of Claim

to Daryl Pugh about if anybody came in the module while he was out he stated no. Plaintiff ask Officer Garrison did Officer Crow come in the module. He said that he saw her around but did not actually see her go in the module because he was going into C-module to ~~control~~ do something. Plaintiff filed another grievance on Officer Teresa Crow falsifying a discipline hearing and violating plaintiff due process. It was told again that Plaintiff denied his hearing. Plaintiff told Classification that he had evidence to prove his innocence but the findings were final. The condition in the module Adseg continued. The inmate module worker witnessed this condition and complained about having to clean up the filth and extremely dirty module. His name Lopez. (including the toxic smell and excessive noise) Plaintiff Conservator finally contacted Lt. Headley and later after plaintiff punishment was over and days after Lt. Headley order plaintiff be moved to General population. Officer Labaro escorted Plaintiff to fourth floor D-module cell one, after plaintiff settle down and was resting two officer, first one officer Williams Broadnaux and officer Largscla told plaintiff that he is being moved. Plaintiff said Plaintiff just got through moving over here from A-module Adseg and that Lt. Headley just moved him over here. Officer Broadnaux said that the Sgt. Childers is moving you back to Adseg. Plaintiff ~~is~~ ask for what. He said he did not know, that Plaintiff would have to ask her. Plaintiff complied with the movement to Adseg F-module. While plaintiff was moving Sgt. Childers and Sgt. ~~Peter~~ Heidi Dolan approached plaintiff. Plaintiff asked Sgt. Childers why was she putting him back on Adseg for no reason after Lt. Headley put him in General Population, she replied not on her shift and ~~this~~ Adseg is where Plaintiff should be. Plaintiff said why, Sgt. Childers said because of his mental illness. Plaintiff told her, she was not right. She asked plaintiff what was Plaintiff doing with all the paperwork he had. Plaintiff told her that he is trying to sue her ass for doing him wrong but he does not know ~~how~~. She said that she treats everyone the same and that she does not show favor-tism. Plaintiff said that he did not want favortism but her to leave him alone and stop doing him wrong. She said she did not know what Plaintiff was talking about. Plaintiff ask why is she having his property searched a second time. she said because everytime you are moved your property is suppose to be searched. Plaintiff said that he was in the same section though so his stuff should not be searched again. she said she was doing her job. She started throwing away papers that she said was garbage, but Plaintiff told her that those papers had notes on them that was part of his defense in his criminal case and personal letters. she threw away envelopes, homemade paper chess pieces, commerical mail, and took legal supplies that the jail issues to inmates on Pro-Per status, note pads with notes on them, legal folder, ~~her~~ highlighter marker. Plaintiff contested, but was not given back the things she took. And Plaintiff

(see page 5I)

5 H

did not receive any receipt for the property that she took. Officer Frank Bailey came to work and plaintiff told Officer Bailey what had happen and officer Bailey told plaintiff that he would take care of the situation and talk to Lt. Headley to put plaintiff back in general population. After about four weeks plaintiff was again placed on general population in D-module cell 1 (one).

On January 30th or 31st 2006, plaintiff attempted to hang his self, but was stopped by floor officer Labaro. Nurse Angie Jim was called and questioned plaintiff. Plaintiff was then escorted to receiving/intake suicide watch his clothes was taken and he was given a smock but no mattress or smock blanket, no tissue paper. After about three days plaintiff was escorted to another suicide watch cell on the second floor infirmary. Plaintiff was given a mattress and tissue but not smock blanket. When plaintiff asked for one Sgt. Debra Sigler told Plaintiff that the smock blankets were at Claybank Jail and would see about get plaintiff a smock blanket, but never did. On Feburary 3, 2006, plaintiff cut his self numerous time with a razorblade that officer Neil Washibyashi slid him, while on suicide watch, which was cruel and unusaul punishment and a total disregard for plaintiffs safety and officer Neil Washibyashi maliciously and sadistically and with deliberate indifference caused plaintiff to injure his self by sliding plaintiff a razor blade on Suicide watch. The supervising Sergeant Debra Sigler responded to plaintiff cutting his self numerous times and requested Plaintiff to hand over the razor. Plaintiff complied. She asked Plaintiff where did he get the razor. Plaintiff told her Neil Washibyashi. She then asked to see plaintiffs arm and told him that he did not need a doctor and would have Nurse Angie Jim and Nurse Greg Smith look at his arm. The Sergeant Debra Sigler showed deliberate indifference by denying plaintiff of seeing the doctor. Nurse's Angie Jim, Greg Smith, and John Maike attended to plaintiff's cutts from a razor all three nurses failed to inquire into the facts necessary to make a professional judgement and denied Plaintiff of seeing a medical Doctor. And Doctor Sheppard failed to respond at all to plaintiffs cuts or this incident with the razor. The three nurses agreed that plaintiff's cuts did not need stetches and were superficial in nature. This was not true and due to not receiving stetches plaintiff suffered major scars, and suffered emotional and mental distress from Neil Washibyashi deliberate indifference by sliding plaintiff the razor blade. Lieutenant Scott Bradford was called and he questioned plaintiff on how he got the razor in Suicide watch. Plaintiff told him that he told Sergeant Debra Sigler how he gotten the razorblade. Lt. Bradford left. A police officer from the street came and asked plaintiff what happen plaintiff told him that he was trying to kill his self. The officer never asked plaintiff were he got the razor or anything else about the incident. Plaintiff was then sent to court and placed back in the same cell. While housed on suicide watch Richard Duncan was talking with a white woman. Plaintiff told the woman that officer Duncan

5I

(see page 5J )

was evil and corrupt and continuing to interupt officer Richard Duncan's conversation with the woman. While they were leaving officer Duncan threaten Plaintiff by telling him that he was working this section that night and we will see who evil. Plaintiff told officer Duncan So what you are still evil and corrupt and a lying ass. Duncan left and never came back. Plaintiff was not sent to a more appropriate facility for his seriously mentally ill state and his condition did not change and he was put on Mental Health Observation and then from there to second floor disso (the hole). Note: While Plaintiff was on suicide watch officer Jason Veach witnessed plaintiff cut his self and participate with the Sergeant Sigler in not providing plaintiff a doctor and denying plaintiff adequate medical attention.

Plaintiff asked why was he moved in the hole (disso) and Sergeant Debra Sigler told him that because of plaintiffs mental illness he was being placed in dicso (the hole) again plaintiff was discriminated against under the American's with Disabilities Act and Rehabilitation Act; while in second floor disо, plaintiff attempted to strang strangle his self with a sheet and was again transfered to suicide watch in receiving/intake and again was not given the proper/adequate suicide watch material, only a smock. When it was time to be transfered officer Don Davis and Rodney Hernnan open the door to inform plaintiff of his transfer. Officer Richard Duncan came out of no where and told plaintiff to get up and face the wall, plaintiff complied. Officer Duncan said O you wanna play and grabbed plaintiff and slammed plaintiff to the next wall over. officer Davis and Hernnan watch and did not say nothing. While officer Duncan continued to use excessive force a maliciously and sadistically plaintiff tryed to get from officers Duncan's way. But officer Duncan grabbed and twisted plaintiff arm, wrist and index finger until plaintiff screamed and said Alright officer Duncan Duncan put the handcuffls on Plaintiff and grabbed plaintiffs hair and with physical force/pa fast pace walked plaintiff to the elevator. officer Davis and Hernnan accompanyied Getting off the elevator plaintiff saw officer Frank Bailey and told him that officer Duncan was treating him with excessive force but he just looked, and officer Duncan continued to treat plaintiff the same way. while being walked in the other suicide watch a crowd of officers gather including officers Davis and Hernnan, the other officers were one that was sign to that section and the other two plaintiff did not reckonize. But all officers watch officer Richard Duncan use excessive force against plaintiff by slamming plaintiff head against the wall while handcuffed and and telling plaintiff that plaintiff was nots hit without his screwdriver, and getting into a fighting stance and told plaintiff come on mother fucker come on and when plaintiff did not response. officer Duncan said He knew plaintiff was a punk mother fucker. Plaintiff spit on officer Duncan in front of all the officers but missed. The door was closed. Plaintiff seen the sergeant Debra Sigler and told her of what officer Duncan

5J

(see page 5K)

Continuing: IV Statement of Claim

had just done. She asked Nurse Angie Jim to take a look at Plaintiff. Officer Jason Veach
told Plaintiff to man-up, plaintiff that he was really in pain. Nurse Angie saw the wound
that Plaintiff suffered on his head from Officers Duncan use of excessive force, and
prescribed plaintiff some pain killers. Plaintiff was sent back to a second floor diso cell #1
(one) and was told by Rod Marsh the Classification Sergeant that because of plaintiff disability
that he was going to stay in diso and remain adseg until plaintiff leaves the facility,
after plaintiff stay in diso, he was sent to Adseg I-module and remained there until
January 29, 2007. The sergeant Rod Marsh discriminated against plaintiff under the Americans
with Disabilities Act.
    *Note: violations were ongoing up until Jan. 29, 2007;    (The end of IV Statement of claim)

Continuing: I Relief

distress from the excessive force, And for Angie Jim providing inadequate medical care.
Plaintiff requests the court to grant him ($25,000.) twenty five thousands for the inadequate housing
of mentally ill and developmentally disabled (including his self) in Administrative Segregation.
Plaintiff requests the court the to grant his ($25,000.) twenty five thousand for the discrimination of his
mental illness by Sgt. Debra Sigler and other classieification officers that participated in the
discrimination and movement. And to grant plaintiff ($15,000.) fifthteen thousand dollar for
Program Sergeant Tina Davis not providing adequate housing and programs for the mentally
ill and developmentally disabled inmates, including plaintiff. (and the discrimination of plaintiff
under the Americans with Disabilities Act and Rehabilitation Act).
Grant plaintiff requests the court to grant him ($100,000.00) one hundred thousand dollars
for the due process violation, discrimination, inadequate menatal health care, and cruel
and unusal punishment. that plaintiff suffer in the Sgt. Childers incident with the threat.
Plaintiff requests the court to grant him ($50,000.) fifty thousand dollars for the inddequate
mental health care while on suicide watch at all time mentioned herein.
Plaintiff requests the court to grant him ($50,000.) fifty thousand dollars for Neil Washibyashi
sliding him a razor blade on suicide watch, and grant him ($25,000.) twenty five thousand dollars
for Sgt. Debra Sigler denying plaintiff to see a doctor for his cuts. and grant plaintiff
($75,000.) seventy five thousands from nurse's Angie Jim, Greg Smith, and John Maike inadeq-
uate medical care, and for failing to into inquire into facts necessary to make a professional judgement
and denying plaintiff of seeing a doctor for his cuts. Grant plaintiff ($15,000.) fifthteen
thousand dollars of Lt. Scott Bradford knowing of the incident with the razor that plaintiff
cut his self with and not doing anything about it. For Jason Veach witnessing and participating
in denying plaintiff adequate medical care and doing nothing about it Plaintiff requests ($10,000.
- ten thousand dollars.                                              (see page 5L)

5K

continuing: V Relief

Plaintiff asks the court to grant him ($5,000) five thousand dollars from all [Rod MARSH, TINA DAVIS] jail employees and medical staff that knew of plaintiff mental illness and participated or witnessed in the cause of plaintiff emotional and mental distress by placing plaintiff in Administrative Segregation and the disciplinary unit, which cause plaintiff to become mentally unstable and suicidial, (including the acts of discrimination.) Plaintiff requests the court to grant him ($150,000.00) One hundred fifty thousand dollars for the use of excessive force and emotional and mental distress caused by Officer Richard Duncan and the officers that witnessed the excessive force and did nothing, and ($5,000) five thousand dollars from nurse Angie Jim for inadequate medical care in regards to documenting it in medical file and treatment for injuries.
Plaintiff requests the court to grant him ($25,000.00) twenty five thousand dollars for Rod Marsh discrimination and procedral due process violation which cause plaintiff to be injure, and for emotional and mental distress.

Plaintiff requests the court to grant him ($150,000.00) One hundred and fifty thousand dollars from Lt. Joseph beadley, Sgt. Childers, officer Crow, and Jason Garrison and Sgt. Dolan for knowing of the inhumane / cruel and usual punishment in A-module Adseg and not doing nothing about it (including other jail employees and medical staffs not mentioned here in) and for emotional and mental distress from the toxic in the module.

        * A more clearer illustration of Prayer for relief:
            Wherefore, Plaintiff seeks judgement as follows:
    A. Compensatory general and special damages in an amount according to proof and/or where applicable, statutory damages or penalties;
    B. Against the individual defendants only, punitive damages
    C. Attorneys fees and costs under 42 USC § 1988
    D. A permanent injunction commanding defendants, Solano County jail, and the Captain Thomas Ferrara to provide adequate mental health care for mentally ill and developmentally disabled inmates, including housing minium, medium, maxium level mentally ill inmates the same way in general-population module arc.
    E. and the costs of this suit and such other relief as the Court finds just and proper.


    VII. DEMAND FOR JURY TRIAL
        Plaintiff demands a jury trial

    Date Feb. 2, 2008                                    Respectfully Submitted
                                                         M WJR
                                                         MACK WEST JR
                        5 L